IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOUIS ACOSTA,

      Plaintiff,                            No. CIV S-09-2946 LKK GGH

   vs.

MICHAEL J. ASTRUE,                FINDINGS AND RECOMMENDATIONS
Commissioner of
Social Security,

      Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). For the reasons that follow, this court recommends that plaintiff's Motion for Summary Judgment be granted, and this matter be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), to the ALJ for further analysis as directed in this opinion. The Clerk should be directed to enter judgment for plaintiff.

BACKGROUND

       Plaintiff, born February 1, 1967, protectively applied on July 7, 2005 for disability benefits. (Tr. at 18, 117.) Plaintiff alleged he was unable to work due to back, neck, leg and

1

shoulder pain. (Id. at 155.)

In a decision dated July 11, 2007, ALJ Peter F. Belli determined plaintiff was not disabled. The ALJ made the following findings:[1]

    1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

    2.     The claimant has not engaged in substantial gainful activity since August 8, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

    3.     The claimant has the following severe impairments: cervical and thoracic myofascial pain, low back pain and shoulder pain, leg numbness, and obesity (20 CFR 404.1520(c) and 416.920(c)).

    4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 1 |   | listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 2 |   |   |
| 3 | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. He can occasionally lift/carry and push/pull 20 pounds and frequently lift/carry and push/pull 10 pounds. He can sit eight hours in an eight hour workday with normal breaks and he can stand/walk three hours in an eight hour workday. He cannot climb ladder, rope, scaffold or crawl. He can occasionally stoop, crouch, and kneel. |
| 4 |   |   |
| 5 |   |   |
| 6 |   |   |
| 7 |   |   |
| 8 | 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 9 |   |   |
| 10 | 7. | The claimant was born on February 1, 1967 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 11 |   |   |
| 12 | 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 13 |   |   |
| 14 | 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 15 |   |   |
| 16 |   |   |
| 17 |   |   |
| 18 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). |
| 19 |   |   |
| 20 |   |   |
| 21 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 22 |   |   |

(Tr. at 18-28.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Finding That Plaintiff did not Have a Severe Knee Impairment; B. Whether the ALJ Failed to Accord

3

Appropriate Weight to the Opinion of the Treating Physician; C. Whether the ALJ Erred in Determining that Plaintiff was not Fully Credible; and D. Whether the ALJ's Functional Capacity Assessment and Finding that Plaintiff Could Perform Work Existing in Significant Numbers in the National Economy is not Supported by Substantial Evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

    A. Whether the ALJ Failed to Consider Medical Records Submitted on May 2, 2007

Plaintiff first sets forth specific items of evidence which he claims were submitted to the ALJ's office on May 2, 2007, 21 days prior to the hearing, and referred to by plaintiff in his pre-hearing brief. These records consist of the following medical evidence.

1) Evidence concerning plaintiff's left knee, inlcuding x-ray and assessment by Dr. Lubin, dated March 20, 2007. (Ex. 8F, Tr. at 337-41.)

2) Evidence concerning plaintiff's neck and back, including:

    a) Dr. Bellomo's treating records, dated March 6, 2007 - August 22, 2006. (Ex. AC-2, Tr. at 361-83.)

b) CT scan of the lumbar spine, dated June 29, 2006.  (Ex. AC-2, Tr. at 371-73.)

c) MRI of the thoracic spine, dated July 17, 2006.  (Ex. AC-2, Tr. at 370.)

d) MRI of the cervical spine, dated July 17, 2006.  (Ex. AC-2, Tr. at 368-69.)

Both the knee x-ray and Dr. Lubin's report were not added to the record until June 6, 2007, two weeks after the hearing occurred.  The ALJ did not mention this evidence in his opinion.  He also did not refer to the back and neck evidence in his opinion, and it is likely he did not consider it as he stated that Dr. Bellomo treated plaintiff from October, 2006 to April,2 007, ignoring the dates of treatment reflected by the additional evidence.  He also noted that Dr. Bellomo stated in an April 2, 2007 reported that he had been treating plaintiff since March 6, 2006, which is apparently the only way the ALJ became aware of this information.  (Id. at 24.)  It is unknown when this other evidence concerning plaintiff's back and neck was added to the record, but the transcript contains exhibit numbering reflective of submission to the Appeals Council only.  The Appeals Council reviewed the evidence and stated only that it was consistent with the other evidence in the record.  (Tr. at 6.)

The undersigned finds that much of this additional evidence was significant, that he did not consider it, and that it may have changed the ALJ's decision had he considered it.  This evidence will be discussed where pertinent below.

B. <u>Whether the ALJ Erred in Finding That Plaintiff did not Have a Severe Knee Impairment</u>

Plaintiff contends that the additional evidence regarding plaintiff's left knee requires a finding that it is a severe impairment.

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.

5

1  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis
2  screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th
3  Cir. 1996).  At this step, the ALJ may decline to find a severe impairment "*only* if the evidence
4  establishes a slight abnormality that has no more than a minimal effect on an individual's ability
5  to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

      The ALJ only found plaintiff's cervical and thoracic myofascial pain, low back and shoulder pain, leg numbness, and obesity to be severe.  (Tr. at 37.)  The ALJ did have plaintiff's knee x-ray, dated March 20, 2007, and Dr. Lubin's report for consideration prior to his decision, although it is unlikely that he reviewed it.  The ALJ's decision does not mention this evidence.

      Impression from the x-ray was mild to moderate degenerative changes in the left knee.  (Tr. at 338.)  Dr. Lubin ordered the x-ray and diagnosed advanced degenerative joint disease in the left knee.  (Id. at 341.)  Exam indicated valgus (knock kneed) alignment and almost normal range of motion at 5 to 130 degrees, as limited by pain.  There was tenderness in the lateral joint line.  (Id. at 340.)  He informed plaintiff that based on his young age and large size, he was not a good candidate for knee replacement surgery, and that arthroscopy would not give him long term pain relief.  (Id.)  Dr. Lubin discussed the possibility of corticosteroid injections, and plaintiff stated that he would think about it.  In his administrative hearing, plaintiff testified that he had started the injections because the anti-inflammatories and pain medications were not working.  (Id. at 73.)  He also testified that he could lose his balance in this knee and has no cartilage or tendons in it, and it is basically held together by skin only.  (Id. at 72-73.)

      This summary of plaintiff's knee pain indicates that it should have been found to be a severe impairment, especially since the ALJ would need to consider it at the later stages of the sequential analysis, especially in regarding to kneeling, bending and other such functions

\\\\\

\\\\\

which are at issue in this case.[2]  Since step two is only a de minimis screening device, the ALJ failed in this regard, and remand is required for consideration of this evidence.

      C. <u>Whether the ALJ Failed to Accord Appropriate Weight to the Opinion of the Treating Physician</u>

Plaintiff next contends that because the ALJ failed to consider critical evidence, he did not give appropriate weight to Dr. Bellomo.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[3]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be

---

[2] The ALJ acknowledged Dr. Bellomo's limitation to no bending, climbing, stooping, crouching or crawling, and occasionally balancing and kneeling. (Tr. at 24.) He discounted this treating physician's opinion for various reasons, however. <u>See</u> discussion *infra*. He chose to rely instead on an earlier opinion by Dr. Bellomo which limited plaintiff to no *repeated* bending or stooping, (<u>Id.</u> at 25), and directed the vocational expert to consider that plaintiff could occasionally stoop, crawl and kneel, but could not crouch, climb a ladder, rope, or scaffold. (<u>Id.</u> at 27.) This assessment may be affected by the additional evidence.

[3] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." <u>Id.</u> Medical opinions from "acceptable medical sources," have the same status when assessing weight. <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

7

rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

      In this case, plaintiff alleges that the ALJ erred in rejecting a more recent April 2, 2007 residual functional capacity report from plaintiff's treating physician, in favor of an older report which did not limit plaintiff's RFC to the same extent. The ALJ chose the older report because the more recent report was contrary to Dr. Bellomo's October, 2006 assessment and because it was not consistent with the record. (Tr. at 24.) Plaintiff claims that the additional evidence concerning plaintiff's neck and back, (outlined in section A *supra*), and submitted prior to the hearing, was crucial but was not considered by the ALJ, and renders his rejection of Dr. Bellomo's later opinion patently erroneous.

      The records discussed by the ALJ were those dated October, 2006 through April, 2007. (Tr. at 307-31.) Dr. Bellomo saw plaintiff every few weeks, and at every visit throughout this entire period he recommended obtaining an MRI of the back to monitor the condition found on the previous MRI, dated March 26, 2005, which included a lesion at the L2 vertebral body

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

8

which might be a hemangioma, as well as degenerative disc disease of the lower back and facet joint arthropathy. (Tr. at 310, 378.) During this six month period, plaintiff never did obtain an MRI. Treatment for plaintiff's neck, back and shoulder pain included Vicodin and physical therapy. (Id. at 313.) The formal diagnosis was "degeneration of the lumbar or lubosacral intervertebral disc" and cervicalgia. (Id. at 314.)

The records which were provided to the ALJ three weeks prior to the administrative hearing, which were not mentioned by the ALJ in his opinion, but were appended to the transcript which was provided to the Appeals Council, included further progress reports from Dr. Bellomo, dated March, 2006 through August, 2006, prior to the October, 2006 through April, 2007 records which were discussed by the ALJ. (Id. at 361-83.) As stated earlier, the ALJ did not review these timely submitted records. The progress reports during this previous time period indicate that as of August 22, 2006, Dr. Bellomo recommended that plaintiff return to work, but with no repeated bending or stooping, lifting a maximum of 20 pounds, and standing or walking no more than two to three hours in an eight hour day. At this time, this physician recommended that plaintiff start physical therapy. He also wanted to obtain SPECT imaging of the spine to rule out "any possible metastatic or active bony lesion," even though the whole body scan performed on August 18, 2006 did not show any evidence of skeletal metastasis. (Id. at 363.)

Also submitted timely but not mentioned by the ALJ, are MRIs of the thoracic and cervical spine, and a CT scan of the lumbar spine. The MRI of the cervical spine, dated July 17, 2006, indicated "C5-6 broad-based disc protrusion, slightly more prominent on the left, impresses the ventral thecal sac without cord impression ... slight reversal of the cervical lordotic curve at C3-4 and C4 may reflect muscle spasm." (Id. at 368.) The July 17, 2006 MRI of the thoracic spine was negative, except for hemangiomata within T2, T3, T9 and T10. (Id. at 370.) The CT scan of the lumbar spine, dated June 29, 2006, showed degenerative spondylolisthesis at L5-S1 which was associated with a central disc protrusion. There was diffuse disc bulge at L4-5

which contributed to bilateral neural foraminal narrowing and possible compromise of the right L5nerve root and L4 roots bilaterally.  Also found was mild spinal stenosis at L3-4.  (Tr. at 372-72.)

The aforementioned objective diagnostic studies are much more current and therefore more significant than the February 18, 2005 x-ray of the lumbar spine, the February 28, 2005 MRI and the June 16, 2005 EMG report.  (Tr. at 381, 382.)  Their content is also more significant than the earlier studies relied upon by the ALJ.  Their inclusion in the record renders the ALJ's reasons for rejecting Dr. Bellomo's later RFC report erroneous.  This case must be remanded for further analysis.[6]

CONCLUSION

Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Summary Judgment be GRANTED pursuant to Sentence Four of 42 U.S.C. § 405(g), and this matter be remanded for consideration of the additional evidence submitted by plaintiff on May 2, 2007.  The Clerk should be directed to enter Judgment for plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

---

[5] Plaintiff does not raise obesity as a separate issue.  While obesity is no longer a grounds for disability in a listing, it should be analyzed at the various steps of the sequential analysis as it affects other maladies.  Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003); Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

[6] Plaintiff also challenges the ALJ's credibility finding.  Because the matter is being remanded for further proceedings, the court will not reach this argument.  However, on remand, if plaintiff's testimony regarding his subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

1  shall be served and filed within fourteen days after service of the objections.  The parties are
2  advised that failure to file objections within the specified time may waive the right to appeal the
3  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4  DATED: 09/27/2010

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Acosta2946.ss.wpd